UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | } |
| | } |
| v. | } Case No.: 2:17-cr-00087-RDP-JHE |
| | } |
| TORRANCE JERMAINE PORTIS, | } |

**MEMORANDUM OPINION**

This matter is before the court on Defendant's Motion to Suppress. (Doc. # 15). Defendant's Motion (Doc. # 15) seeks suppression of all evidence obtained as a result of the Calera Police Department's search of his vehicle on November 6, 2016, as well as suppression of any statements he made after he was pulled over. Defendant (Doc. # 15) and the Government (Doc. # 16) each submitted briefs in support of their positions. The court conducted an evidentiary hearing on Defendant's Motion on July 10, 2017. The Motion is now fully briefed and ripe for review.

**I.     Findings of Fact**

Shortly before 8:00 a.m. on November 16, 2016, Calera Police Officer Nick Burnett observed Defendant traveling northbound in a white Cadillac Deville on I-65. Burnett testified that he observed the Cadillac cross the fog lane (without signaling) in violation of state law. Burnett conducted a traffic stop of Defendant's car, and requested his license and registration. (Doc. # 16-1, Police Video, 2:30). He then pointed at a number of air fresheners which were hanging from Defendant's rear view mirror and told Defendant that he could not have the air fresheners hanging like that, because it obstructed the driver's view. (*Id.* at 2:45). Burnett also stated that Defendant "went over the white line" and swerved out of his lane and onto the

"rumble strip" on the right shoulder of the road. (*Id.* at 6:15). Burnett testified that he immediately noted the scent of marijuana when he approached the Cadillac.

Another member of the Calera Police Department, Officer Krukowski, arrived on the scene to assist Burnett. (*Id.* at 7:00). After stepping away from the passenger side door, Burnett told Krukowski that Defendant was "trying to cover up the smell of it, with that black and mild, [a cigar] but -- but you can smell marijuana or what appears to be marijuana coming from the vehicle." (*Id.* at 7:03). Burnett eventually asked Defendant to step out of his vehicle. (*Id.* at 7:20). Burnett noticed a bulge in Defendant's front pocket, and asked Defendant what it was. (*Id.* at 7:55). Defendant stated that it was money. (*Id.* at 8:00). The officers found a wad of cash and a pocket knife in the pockets of Defendant's pants. (*Id.* at 8:24-9:56). Burnett then began to search the car for marijuana, while Defendant stood on the side of the road with Krukowski. (*Id.* at 11:35). Defendant was not handcuffed or otherwise restrained at this time. (*Id.*).

After unsuccessfully searching for marijuana in the passenger compartment of the car, Burnett told Defendant:

> I am not going to let this car go before I find where that green weed is in that car. I'm telling you that for a matter of fact. I don't care what you do. I -- I -- I don't care. I'm going to tell you this, whatever I have to do, I'll seize that car and get a search warrant for it or whatever. I'm not threatening you, I'm not doing any of that.

(*Id.* at 14:30). In response, Defendant stated that he had been "smoking a blunt[1]," and that he had thrown it out the window when he saw Burnett's police car. (*Id.* at 15:15). However, he denied possessing any additional marijuana. (*Id.* at 15:20-55).

After continued searching, Burnett found marijuana, cocaine, and a loaded Taurus 9mm pistol in a backpack located in the truck of the car. (*Id.* at 29:23). He then placed Defendant in

---

[1] Defendant later stated that the blunt consisted of "Hydro," presumably a reference to hydroponically grown marijuana. (*Id.* at 17:07).

handcuffs. (29:30). Krukowski placed Defendant in a police vehicle, asked whether he had any other items of contraband on his person, and advised Defendant of his *Miranda* rights. (Video, 32:12-24

## II. Analysis

Defendant's Motion seeks to exclude two categories of evidence. First, Defendant's Motion alleges deficiencies in the search of his car, and seeks the exclusion of the contraband that was found therein. Second, Defendant's Motion alleges that certain statements he made were coerced and the product of a custodial interrogation, and argues that those statements are due to be excluded. The court addresses each argument, in turn.

### A. The Traffic Stop and Search of Defendant's Vehicle Was Not Unreasonable

The Fourth Amendment protects against "unreasonable" government searches and seizures. Nevertheless, the police may stop and briefly detain a person to investigate a reasonable suspicion that he is involved in criminal activity. *United States v. Williams*, 876 F.2d 1521, 1523 (11th Cir. 1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). This legal principle permits police officers to stop a moving automobile based on a reasonable suspicion that its occupants are violating the law. *Id.* at 1524 (citing *United States v. Hensley*, 469 U.S. 221, 226 (1985); *United States v. Sharpe*, 470 U.S. 675, 682 (1985)). When a traffic stop is initiated due to a traffic violation, the "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' – to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405 (2005)) (internal citations omitted).

However, a traffic stop may last longer than just the time "necessary to process the traffic violation" when there is articulable suspicion of other illegal activity. *United States v. Purcell*,

236 F.3d 1274, 1277 (11th Cir. 2001). And, "[a]n officer can conduct a warrantless search or seizure of a vehicle if there exists probable cause to believe that the vehicle contains contraband or other evidence which is subject to seizure under the law and there exist exigent circumstances which necessitate a search or seizure." *United States v. Forker*, 928 F.2d 365, 368 (11th Cir. 1991) (citing *United States v. Alexander*, 835 F.2d 1406, 1409 (11th Cir. 1988)). "[T]he requirement of exigent circumstances is satisfied by the 'ready mobility' inherent in all automobiles that reasonably appear to be capable of functioning." *United States v. Nixon*, 918 F.2d 895, 903 (11th Cir. 1990). When probable cause exists, and the automobile exception applies, the scope of the permissible warrantless search is defined by the object of the search and the places in which there is probable cause to believe that it may be found. *United States v. Ross*, 456 U.S. 798, 824 (1982).

Here, Burnett testified that he observed Defendant cross over the fog line and drive onto the rumble strips on the side of the interstate. Alabama law requires that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane." Ala. Code § 32-5A-88(1). Reasonable suspicion is determined from the totality of the circumstances, and while "this standard is considerably less demanding than proof of wrongdoing by a preponderance of the evidence and less than probable cause, the Fourth Amendment nevertheless requires that the police articulate facts which provide some minimal, objective justification for the stop." *Williams*, 876 F.2d at 1524. Facts supporting reasonable suspicion may be derived from "various objective observations… and consideration of the modes or patterns of operation of certain kinds of lawbreakers." *Id.* (citing *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

Burnett had sufficient reasonable suspicion to conduct a traffic stop because he witnessed Defendant commit a traffic infraction by crossing the fog line on the road without signaling.

Moreover, Burnett testified that Defendant's driving -- specifically, the fact that Defendant crossed the fog line -- raised suspicion that Defendant may be driving while impaired. Burnett testified that on previous occasions he had encountered impaired drivers during the morning hours. The court credits Burnett's testimony regarding what he observed. Accordingly, Burnett had sufficient reasonable suspicion to conduct his initial stop of Defendant not only because he observed Defendant commit a traffic violation, but also because he observed behavior which led him to suspect that Defendant may be driving while impaired.

Of course, this reasonable suspicion must have developed into probable cause of other illegal activity in order for Burnett to conduct a search of Defendant's automobile. Here, the court finds probable cause existed for a search. Burnette testified that he smelled an "overwhelming" odor of marijuana[2] as he approached Defendant's car. He used his radio to call for another officer to assist him, because he planned to conduct a vehicle search based on the "strong odor" of marijuana that was coming from the vehicle. When Krukowski arrived on the scene, Burnette told him that he (Burnette) could smell a strong odor of marijuana and that he suspected that Defendant was smoking a cigar in an attempt to mask the odor of the marijuana. Moreover, Burnette testified that it appeared the five or six air fresheners hanging in Defendant's car were there in a further attempt to mask the marijuana odor. At one point, Burnette asked Krukowski to stand near the vehicle to see if he could smell anything, and Krukowski reported that he too could smell the odor of marijuana.[3]

---

[2] Burnett testified that he had approximately five years' experience as a police officer, and that he had an additional three to five years' of experience as a reserve officer. He testified that he had received formal training regarding drug investigations, and that he was familiar with the smell of marijuana.

[3] Krukowski described the scent of the marijuana as "loud," an apparent reference to the strength of the marijuana odor.

The smell of marijuana may provide probable cause to believe that a crime has been committed. *United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982) ("At the point marijuana was smelled by Officer Helgeson, probable cause to believe a crime had been committed, namely the importation and possession of contraband, arose."); *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) ("There is no doubt that the agent's suspicions rose to the level of probable cause when, as the door stood open, he detected what he knew from his law enforcement experience to be the odor of marijuana.").

Here, the court credits Burnette's testimony that he smelled an odor of marijuana coming from Defendant's car. The video of the traffic stop records Burnette saying that he smelled marijuana multiple times, which makes it less likely that he fabricated the basis for his search after the fact. And, the video of the stop further shows Krukowski smell the car and confirm that Defendant's car smelled of marijuana. That Defendant began "puffing" a cigar (and had five or six air fresheners hanging in his car), potentially to mask the smell of marijuana, further supports Burnette's credibility by raising the inference that there was indeed a smell of marijuana which Defendant felt he needed to mask. Moreover, Defendant admitted to Burnette that he had "smoked a blunt" immediately prior to the traffic stop. Regardless of its ultimate admissibility as evidence of Defendant's guilt at trial, the court can (and does) consider this statement as it relates to the credibility of Burnette's testimony. The fact that Defendant stated that he had smoked marijuana in his vehicle prior to being pulled over further supports Burnette's testimony that he smelled the odor of marijuana when he approached Defendant's car.

Having found Burnette's testimony credible, the court readily concludes that his search of Defendant's car was permissible, and the evidence discovered from the search is not due to be excluded. That Burnette and Krukowski smelled the strong (or loud) odor of marijuana is

6

sufficient to establish probable cause of illegal activity. And, because the smell came from Defendant's car, which was readily movable, exigent circumstances existed which allowed Burnette to search the vehicle without a warrant. *See Nixon*, 918 F.2d at 903. Further, because probable cause existed that Defendant's car contained marijuana, Burnette was entitled to search those places in the car where marijuana could be found. *Ross*, 456 U.S. at 824. Burnette's search of the trunk of Defendant's car was supported by probable cause and fully in compliance with *Ross*. To the extent that Defendant's Motion seeks suppression of physical evidence seized as the result of the stop, it is due to be denied.[4]

### B. Defendant's Pre-Arrest Statements the He Smoked Marijuana in His Car are Due to be Excluded

In his Motion, Defendant argues that statements that he made after he was pulled over are due to be excluded. Under *Miranda*, evidence obtained as a result of custodial interrogation is inadmissible unless the defendant had been warned of his rights and knowingly waived those rights. *United States v. Parr*, 716 F.2d 796, 817 (11th Cir. 1983). Defendant contends that his detention on the side of the road amounted to a custodial interrogation, and that the statements he made in response to the officers' questioning are inadmissible. In response, the Government points to *Acosta* to support its argument that traffic stops such as the one here do not amount to custodial interrogation. *United States v. Acosta*, 363 F.3d 1141 (11th Cir. 2004).

In *Acosta*, the court noted that:

---

[4] Apart from his challenge to the legality of Burnette's stop and search of his car, Defendant makes no independent argument for suppression of the knife and cash which were found on his person at the time of the traffic stop. To be clear, the knife and money the officers found on Defendant's person are not due to be excluded. An officer may conduct a search for the discovery of weapons when he has an objective, reasonable belief that his safety or that of others is in danger. *United States v. Clay*, 483 F.3d 739, 744 (11th Cir. 2007) (citing *Terry v. Ohio*, 392 U.S. 1, 26-27 (1968)). Here, Burnette stopped Defendant's car on the side of a highway. He smelled marijuana coming from the car. He conducted a patdown of Defendant, and felt the wad of cash in Defendant's pocket. Burnette asked Defendant to get the cash out of his pocket, and Defendant consented to this request and allowed Burnette to examine the cash. As Krukowski finished the patdown, he removed the knife from Defendant's pocket. This conduct was consistent with *Terry*. There is no basis for excluding evidence of the knife and cash.

> Normally courts apply a two-part test to determine whether a suspect is in custody for *Miranda* purposes: "first, what were the circumstances surrounding the interrogation; and, second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave."

*Id.* at 1148 (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). However, this inquiry is slightly modified in the context of a traffic stop. "Instead of asking whether a suspect reasonably would feel free to leave… the question should be 'whether a traffic stop exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.'" *Id.* at 1149 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984)). This modified analysis is appropriate because (1) "detention of a motorist pursuant to a traffic stop is presumptively temporary and brief," and thus is distinguishable from a prolonged stationhouse interrogation where questioning may continue until the detainee provides the answers his interrogators seek, and (2) most traffic detainees would not feel completely at the mercy of the police. *Id.* (quoting *Berkemer*, 468 U.S. at 437-38).

But one key fact distinguishes this case from *Acosta* and the other cases which the Government cites. The *Acosta* court found that a traffic stop did not amount to a custodial interrogation because: the defendant was stopped in broad daylight, not in a remote area; the questioning officers holstered their weapons before questioning the defendant; and the defendant was allowed to stand outside without being handcuffed while he was being questioned. *Id.* at 1150. Some of the *Acosta* factors are here, also. No force was used against Defendant, and the questioning occurred on the side of a public roadway. However, there is one key distinction. Burnett specifically told Defendant:

> I am not going to let this car go before I find where that green weed is in that car. I'm telling you that for a matter of fact. I don't care what you do. I -- I -- I don't care. I'm going to tell you this, whatever I have to do, I'll seize that car and get a

search warrant for it or whatever. I'm not threatening you, I'm not doing any of that.

(Video at 15:26). As mentioned above, one factor that differentiates a traffic stop from a traditional stationhouse questioning is that a traffic stop is "presumptively temporary and brief." *Acosta*, 363 F.3d at 1149. However, Burnett made it clear that this traffic stop would be neither temporary nor brief, unless he promptly found the marijuana he was looking for. Faced with this compulsion, Defendant stated that he was "smoking a blunt" prior to the traffic stop. Burnette's statement objectively indicated that this stop was different from a typical traffic stop, and would continue until the officers found marijuana. The totality of the circumstances, specifically including Burnette's statement regarding the potential length of the traffic stop, were such that a reasonable person in Defendant's position would have believed that he was at the mercy of the police, away from the protection of public scrutiny, and had better confess or else. Accordingly, *Miranda* warnings were required, and Defendant's statements (made after Burnett told him that he was not going to let the car leave) admitting to smoking marijuana are due to be excluded. However, there is no evidence which suggests that Defendant's statements that he smoked a blunt led to the discovery of the contraband in the car. To the contrary, the tenor of Defendant's remarks indicates his insistence that the officers only smelled the marijuana that he had previously smoked, and that there was no other marijuana in the car. Accordingly, Burnette's failure to give Defendant *Miranda* warnings does not affect the admissibility of the evidence discovered in Defendant's trunk. And, after the officers discovered the gun and drugs in Defendant's trunk, they gave him a *Miranda* warning. (Video, 32:12-24). Accordingly, only Defendant's answers to the officers' questions which were given between the beginning of the custodial interrogation (when Burnette told Defendant the car would not leave) the subsequent *Miranda* warning are due to be excluded.

## III. Conclusion

For the reasons stated above, Defendant's Motion is due to be granted in part and denied in part. A separate order will be entered.

**DONE** and **ORDERED** this July 12, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE